UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James S. Servidas,

    Plaintiff,

    v.                                                            Civil Action No. 2:17–cv–69–jmc

Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 16, 17)

    Plaintiff James Servidas brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Pending before the Court are Servidas's motion to reverse the Commissioner's decision (Doc. 16), and the Commissioner's motion to affirm the same (Doc. 17). For the reasons stated below, Servidas's motion is GRANTED, the Commissioner's motion is DENIED, and the matter is REMANDED for further proceedings and a new decision.

## Background

    Servidas was 48 years old on his amended alleged disability onset date of August 1, 2014. He dropped out of school in the seventh grade but later earned his eighth grade diploma and a GED. From 1997 through 2014, Servidas held approximately five unskilled manual labor jobs. His most recent job was as a

lumber stacker at Britton Lumber from 2009 until he was terminated in August 2014. Servidas is divorced, and has four children. On the date of the administrative hearing, he was living in the basement of his brother and sister-in-law's house.

Servidas grew up in a troubled home with his parents and nine siblings. He was sexually molested by an older brother for approximately two years starting when Servidas was eight years old. He had academic and disciplinary problems in school. As an adult, Servidas was arrested four times. In 1999, he pled no contest to a charge of lewd and lascivious conduct with his 15-year-old stepdaughter, requiring him to register as a sex offender. His parental rights were terminated soon thereafter, and his wife left him, cutting off contact with his children until recently, when his youngest daughter reinitiated contact. Around the time of the lewd and lascivious conduct arrest, Servidas attempted suicide, resulting in hospitalization.

Servidas suffers from several physical impairments, including migraine headaches, traumatic osteoarthritis of the ankle, and obesity. He testified at the administrative hearing that "everything aches," and that he is "constantly uncomfortable" and "always in pain," largely due to his age and years of doing manual labor jobs. (AR 68.) Servidas also suffers from multiple mental health impairments, including chronic depression, anxiety disorder, posttraumatic stress disorder (PTSD), and panic disorder. The record demonstrates that Servidas's most significant impairments are his depression and his difficulty getting along with

people. He testified that he does not want to get up in the morning; he stays in his room all day, listening to the television and doing nothing; he does not go out and socialize; and he does not see anyone regularly other than his brother and his girlfriend with whom he lives. (AR 65–66.)

Servidas protectively applied for DIB on August 22, 2014 and for SSI on October 20, 2014. (AR 188, 190.) In his disability application, Servidas alleged that, starting on August 1, 2014,[1] he has been unable to work due to arthritis in his joints and hands, depression, social anxiety, PTSD, sleep apnea, memory problems, and a "quick temper." (AR 217.) Servidas's application was denied initially and upon reconsideration, and he timely requested an administrative hearing. The hearing was conducted on August 11, 2016 by Administrative Law Judge (ALJ) Dory Sutker. (AR 30–84.) Servidas appeared and testified, and was represented by an attorney. A vocational expert (VE) also testified at the hearing.

On October 5, 2016, the ALJ issued a decision finding that Servidas was not disabled under the Social Security Act at any time from his amended alleged disability onset date through the date of the decision. (AR 13–25.) Thereafter, the Appeals Council denied Servidas's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–6.) Having exhausted his administrative remedies, Servidas filed the Complaint in this action on April 21, 2017. (Doc. 1.)

---

[1] Initially, Servidas alleged that his disability began on November 27, 1999 (AR 188), but he later amended that date to August 1, 2014 (AR 212).

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at

4

steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Sutker first determined that Servidas had not engaged in substantial gainful activity since his amended alleged disability onset date of August 1, 2014. (AR 15.) At step two, the ALJ found that Servidas had the following severe impairments: anxiety disorder variously diagnosed as PTSD, panic disorder and anxiety disorder unspecified, affective disorder variously diagnosed as bipolar disorder and depressive disorder unspecified, obesity, migraine headaches, and traumatic osteoarthritis of the ankle. (*Id.*) Conversely, the ALJ found that Servidas's left hip condition was non-severe. (AR 16.) At step three, the ALJ found that none of Servidas's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 16–18.)

Next, the ALJ determined that Servidas had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except as follows:

> [Servidas] can never climb ladders, ropes[,] and scaffolds; [can] occasionally balance, stoop, kneel, crouch[,] and crawl; [can] occasionally climb ramps and stairs; [can have] no exposure to temperature extremes (either cold or hot); must avoid environments with uneven, slippery[,] or wet surfaces; requires an environment with no more than a moderate noise level; can perform uncomplicated tasks (defined as tasks that can typically be learned in thirty days or less); . . . concentration, persistence[,] and pace would be somewhat variable, but productivity

5

would never be more than 10% below the norm; limited to incidental contact with the general public (i.e., dealing with the general public would not be part of [his] job duties, but [he] could tolerate passing someone in the hall, etc.); would need an environment where tasks are performed in a solitary manner (i.e., no tandem or teamwork tasks), but otherwise [he] could collaborate with co-workers and supervisors on routine matters; needs an environment without frequent task changes.

(AR 18.) Given this RFC, the ALJ found that Servidas was unable to perform his past relevant work as a lumber handler, kiln operator, manufacturing helper, farm worker, production welder, and production machine tender. (AR 22.) Finally, based on testimony from the VE, the ALJ determined that Servidas could perform other jobs existing in significant numbers in the national economy, including the representative jobs of laundry folder, sorter of agricultural produce, and photocopy machine operator. (AR 23.) The ALJ concluded that Servidas had not been under a disability from the amended alleged onset date of August 1, 2014 through the date of the decision. (AR 24.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Servidas makes two primary arguments in his motion: (1) the ALJ failed to properly develop the record regarding Servidas's mental health impairments; and (2) the ALJ erred in the step-five finding that there are jobs existing in significant

7

numbers in the national economy that Servidas can perform. (Doc. 16 at 9–15.)
The Commissioner responds by asserting that the ALJ made no error in the
development of the record and properly relied on the VE's testimony to find that
Servidas was not disabled at step five of the sequential evaluation. (Doc. 17 at
3–11.) As explained below, I find in favor of Servidas on the first claim and
therefore remand for further proceedings and a new decision.

I.  **ALJ's Development of the Record Regarding Servidas's Mental Health Impairments**

Servidas claims that "the ALJ did not sufficiently develop the record when she failed to order a mental [consultative examination] for Servidas[] and instead relied on [the consultative examination of Dr. Douglas Lilly, an orthopedic surgeon,] for both [Servidas's] physical and mental impairments." (Doc. 16 at 10.) Servidas asserts that the ALJ's failure to obtain a mental consultative examination was particularly egregious given the ALJ's recognition that "'[t]he longitudinal treatment record and objective evidence is rather sparse.'" (*Id.* (quoting AR 19) (alteration in original).)

"It is the rule in [the Second C]ircuit that 'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.'" *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (second alteration in original) (quoting *Echevarria v. Secretary of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)). This duty arises from the Commissioner's regulatory obligation to develop a complete medical record before making a disability determination, 20 C.F.R. § 404.1512(d)–(e), and exists even when the

8

claimant is represented by counsel, *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33, n.1 (2d Cir. 2013) (summary order) (Although counsel "has a responsibility to bring all favorable evidence to the ALJ's attention," "counsel's responsibilities do not derogate from the ALJ's responsibility to investigate."). The ALJ's duty to develop the record is "enhanced" where, as here, the disability in question is a psychiatric impairment. *Estrada v. Comm'r of Soc. Sec.*, No. 13–CV–04278 (CM)(SN), 2014 WL 3819080, at *3 (S.D.N.Y. June 25, 2014) ("The Regulations articulate that claims concerning mental disorders require a robust examination that is sensitive to the dynamism of mental illnesses and the coping mechanisms that claimants develop to manage them[.]").

The ALJ must ensure that the record as a whole is complete and detailed enough to allow her to determine the claimant's RFC. *See* 20 C.F.R. § 404.1513(e)(1)–(3); Social Security Ruling (SSR) 96–8p, 1996 WL 374184, at *5 (1996). If the record is inadequate, the ALJ will first contact the claimant's treating source; and if that is ineffective, the ALJ will then ask the claimant to attend a consultative examination at the Social Security Administration's expense. *See* 20 C.F.R. § 416.912(d)–(e); *Gross v. Astrue*, No. 12–CV–6207P, 2014 WL 1806779, at *19 (W.D.N.Y. May 7, 2014) ("As a general rule, where the [record] contains only diagnostic evidence and no opinion from a medical source about functional limitations . . . , to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a

9

medical expert testify at the hearing." (alteration in original) (internal quotation marks omitted)).

The ALJ retains discretion to determine whether a consultative examination is necessary; the ALJ is required to order an examination only where the record establishes that it is necessary for her to render a decision. *See* 20 C.F.R. §§ 404.1519, 404.1519a(a)–(b). Generally, the ALJ must order a consultative examination when "[a] conflict, inconsistency, ambiguity[,] or insufficiency in the evidence must be resolved." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 209 (W.D.N.Y. 2005) (first alteration in original) (quoting 20 C.F.R. § 404.1519a(b)(4)); *see* 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). A consultative examination is particularly useful where the record reflects that the claimant suffers from more than minor impairments. *See Ramos v. Colvin*, No. 13–CV–6503P, 2015 WL 925965, at *10 (W.D.N.Y. Mar. 4, 2015).

Here, the ALJ concluded in her decision that Servidas's mental impairments—including anxiety disorder, PTSD, panic disorder, bipolar disorder, and depressive disorder—were significant enough to constitute severe impairments (AR 15), and the record supports this conclusion (*see, e.g.*, AR 47–48, 60–62, 65, 69–71, 247–48, 374, 377, 379, 380, 407, 415, 460, 480, 499, 533–36, 587). Yet there is no indication that the ALJ contacted any of the mental health care providers who treated Servidas during or in the months before the alleged disability period.

10

Although Servidas underwent a consultative physical examination by orthopedist Dr. Lilly, he was not referred for an examination by a consultative psychologist or psychiatrist. Thus, no psychiatrist or psychologist, other than nonexamining agency consultant Edward Hurley, Ph.D, gave an opinion regarding the functional limitations caused by Servidas's longstanding mental health impairments. The ALJ's failure to obtain a medical assessment of the extent of Servidas's mental impairments from either a treating or consultative mental health provider renders the record incomplete. *See Ramos*, 2015 WL 925965, at *10 (collecting cases) (remanding where "[t]he ALJ thoroughly reviewed and discussed the treatment records, but did not have a medical source statement or a consultative examination report to assist him in translating the treatment notes into an assessment of [the claimant's] mental capacity for work-related activities," and instead "used his own lay opinion to determine [the claimant's] mental RFC"); *Haymond v. Colvin*, No. 1:11–CV–0631 (MAT), 2014 WL 2048172, at *8 (W.D.N.Y. May 19, 2014) (where the claimant's mental health impairments were long-standing, requiring inpatient psychiatric care on at least one occasion, and "the record contains no assessment from an examining provider, much less a treating source, quantifying [the claimant's] mental limitations," "the record was not sufficiently complete for the ALJ to render an accurate RFC"); *cf. Ocasio v. Astrue*, 32 F. Supp. 3d 289, 295–96 (N.D.N.Y. 2012) (no duty to obtain a consultative examination where the ALJ appropriately determined that the claimant's alleged depression was not a severe impairment).

11

The record indicates that Servidas regularly attended mental health treatment including counseling from at least early 2014 through the summer of 2016, principally due to his depression, PTSD, and social anxiety. (*See* AR 349–412, 452–81, 495–502, 510–87.) Even though some of these records are from months before the amended alleged disability onset date of August 1, 2014, they are relevant to Servidas's mental health impairments during the relevant period, given that there is no evidence that Servidas's mental condition deteriorated after that date. *See Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) (ALJs "may consider all evidence of record, including medical records and opinions dated prior to the alleged onset date," when there is no evidence of deterioration or progression of symptoms); *Ward v. Shalala*, 898 F. Supp. 261, 263 (D. Del. 1995) (although "the focus of the inquiry" is the period after the alleged disability onset date, evidence of claimant's condition prior to that date "is to be considered by the ALJ in furtherance of evaluating whether the applicant qualifies for benefits"). Moreover, although the record demonstrates that some of Servidas's symptoms were alleviated by medication at times, it is clear that Servidas nevertheless continued to experience significant symptoms of depression, PTSD, and anxiety, including isolating in his room at his brother's house, having an anxiety attack at the social security office causing him to return to his car and have paperwork delivered to him there, and having a panic attack at the dentist's office requiring him to be taken by ambulance to the hospital. (AR 47–48, 60–62, 65, 69–71.)

At the administrative hearing, Servidas's counsel stated that Servidas "has sought counseling . . . throughout the years," including when he was fired from his job in August 2014. (AR 38.) Counsel further stated that Servidas "is current[ly] in counseling." (*Id.*) Moreover, there are ample treatment notes in the record indicating that Servidas's providers believed his mental health impairments were significant.[2] For example, in January 2014, Dr. Daniel Storms stated: "It seems as though [Servidas's] reported depression is certainly severe enough to warrant treatment, as it may be encroaching on his functional status at work."[3] (AR 415.) And in March 2014, counselor Peter Butterfield, MA, opined that Servidas's "Social Judg[]ment" was "Severely Impaired"; he "easily angered"; he had "Little to no Insight"; he had a past suicide attempt; and he was anxious, depressed, irritable, and evasive. (AR 359.) In May 2014, Dr. Kevin Buchanan noted that Servidas "had [a history] of trauma including intru[]sive memories, triggered by[] aversion to being controlled, anger, chronic depression, mistrust of others, and hypervigilence." (AR 377.) And in March 2015, Dr. Joeclyn Campos referred Servidas to a psychiatrist, stating that test results indicated he had "uncontrolled anxiety

---

[2] The record also demonstrates that Servidas's former employer believed his mental health impairments to be significant. In September 2014, the Director of Human Resources at Britton Lumbar Company, Rebecca Eastman, stated in a Job Screening Questionnaire that Servidas experienced "some difficulty" with accepting instructions and reasonable criticism, asking questions and requesting help, cooperating with coworkers, and starting work on time; experienced "great difficulty" with avoiding disrupting other employees and having acceptable attendance; and "required additional supervision." (AR 247–48.) Eastman added that Servidas "had multiple confrontations with both co-workers and supervisors during his employment" and "exceeded his paid time off benefits consistently and left early multiple times during his tenure at the company." (*Id.*)

[3] Dr. Storms questioned whether the severity of Servidas's depression was related to his "non-compliance with synthroid in [the] setting of hypothyroidism," but appears not to have considered the issue in more detail. (AR 415.)

13

disorder" and that there was a "[c]oncern for bipolar depression due to . . . [a] possible episode of mania." (AR 499.) Given that none of Servidas's treating mental health providers completed an assessment of Servidas's mental functional limitations during the relevant period, the ALJ should have ordered a consultative examination and report from a consulting psychologist or psychiatrist.

Instead, the ALJ appears to have relied, at least in part, on the report of consultative examiner Dr. Lilly.[4] (*See* AR 20.) But both parties agree that Dr. Lilly practices in orthopedic surgery and was not qualified to opine on Servidas's mental impairments. (Doc. 16 at 10; Doc. 16-1 at 8; Doc. 17 at 4.) Although the ALJ's decision discusses Servidas's mental health treatment records (*see* AR 21 ("Psychiatric treatment notes show ongoing complaints of depression and anxiety. [The] notes are replete with references to [Servidas's] inability and unwillingness to be around others.")), the ALJ did not have a medical source statement or a consultative examination report to assist her in translating these records into an assessment of Servidas's mental capacity for work-related activities. The ALJ therefore improperly used her own lay opinion to determine Servidas's mental RFC. *See Haymond*, 2014 WL 2048172, at *7–8 (where "no psychiatrist, psychologist, social worker, or counselor examined [the claimant] and gave an opinion regarding the functional limitations caused by her multiple and long-standing mental

---

[4] The Court summarily rejects Servidas's argument that, because another individual by the name of Jeremy Fenlon electronically signed an affirmation regarding Dr. Lilly's examination report, the report is "invalid." (Doc. 16 at 10; *see* AR 450–51.) Dr. Lilly's signature appears on the report, authenticating that he performed the examination and completed the report (*see* AR 449), and Servidas does not dispute that the examination occurred and was conducted by Dr. Lilly.

impairments," and "[t]he only mental RFC assessment in the record was completed by a non-examining state disability medical consultant," the claim was remanded and the ALJ was "directed to request a mental RFC assessment or medical source statement from [the claimant's treating psychiatrist] or some other acceptable medical source regarding the functional limitations caused by [the claimant's] mental impairments"); *Walker v. Astrue*, No. 08–CV–0828(A)(M), 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) ("Given the limited evidence in the record of plaintiff's functional limitations from her mental impairments, including the lack of any treating or consultative opinions concerning the extent of these limitations, I conclude that [the] ALJ . . . should have ordered a consultative psychological examination or attempted to contact plaintiff's treating physicians to complete the record in order to make a proper RFC determination."); *Vernon v. Astrue*, No. 06 Civ. 13132(RMB)(DF), 2008 WL 5170392, at *24 (S.D.N.Y. Dec. 9, 2008) ("[T]he ALJ's determination that [p]laintiff's psychological impairments resulted in moderate restrictions cannot be said to be based on any opinion or piece of evidence other than his lay inference and therefore cannot stand without further explanation.").

Notably, after reviewing Servidas's medical records through April 2015, nonexamining agency consultant Dr. Hurley found that Servidas had "[m]oderate" limitations in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. (AR 112.) Moreover, even though Dr. Hurley completed his report approximately six months *after* the date of

Dr. Lilly's report, Dr. Hurley stated in his report, under the heading "Consultative Examination(s) (CE)," that "additional evidence [is] needed" because it "is not contained in the records of [Servidas's] medical sources," and "[t]he treating source prefers not to perform/does not have the equipment [to perform the] [s]pecific exam needed." (AR 110.) It can be inferred that the type of examination referenced by Dr. Hurley is a mental health examination, rather than a physical examination, given that Dr. Lilly's physical examination was already a part of the record when Dr. Hurley made these statements. (*Id.*; *compare with* AR 442–49.) *See Molt v. Comm'r of Soc. Sec.*, No. 1:05-CV-0418 (NPM/VEB), 2009 WL 5214920, at *6 (N.D.N.Y. Dec. 28, 2009) (noting that "the ALJ was previously made aware of the need to develop the record," and remanding to require the ALJ to request a functional assessment of the claimant's limitations from her treating psychiatrist, or alternatively, to send the claimant to a psychiatric consultative examiner). Even Dr. Lilly recognized that Servidas's mental impairments were likely significant, stating in his report: "No significant impairment noted *with the exception of his morbid obesity and alleged depression*." (AR 443 (emphasis added).)

The ALJ may have attempted to justify the failure to contact Servidas's mental health providers or to request a consultative psychological exam based on the observation that "[t]he longitudinal treatment record and objective evidence is rather sparse and provides only some support to [Servidas's] allegations." (AR 19.) But there is no support in the case law or regulations for the proposition that a claimant's "sparse" treatment record excuses an ALJ's regulatory duty to assemble

16

a complete record. *Haymond*, 2014 WL 2048172, at *8. Rather, as stated above, the regulations require that the ALJ must order a consultative examination when "[an] . . . insufficiency in the evidence must be resolved." *Woodworth v. Colvin*, No. 6:15-CV-6041(MAT), 2015 WL 9255566, at *4 (W.D.N.Y. Dec. 18, 2015) (quoting 20 C.F.R. §§ 404.1519a(b)(4), 416.929a(b)(4)).

In sum, the Court concludes that remand is necessary for the ALJ to obtain a functional assessment of Servidas's mental limitations from an acceptable medical source, either treating or consulting.

## II. ALJ's Step-Five Finding that Jobs Exist in Significant Numbers in the National Economy that Servidas Can Perform

Servidas also challenges the ALJ's step-five determination that there are jobs existing in significant numbers in the national economy that Servidas can perform. Because the additional evidence sought and received on remand pursuant to the above findings could affect the ALJ's assessment of Servidas's credibility and RFC determination, the Court does not reach this issue. *See Jones v. Barnhart*, No. 02 Civ. 0791(SHS), 2003 WL 941722, at *13 (S.D.N.Y. Mar. 7, 2003) ("Because we remand for the reason set forth above, and because there is additional evidence in the record that may impact the ALJ's assessment of [the claimant's] credibility and his resolution of [the claimant's] disability claim, we do not address here whether those determinations are supported by substantial evidence.").

## Conclusion

The Court finds that the ALJ did not fulfill the duty to develop the record regarding Servidas's mental health impairments, resulting in a decision that is not

17

supported by substantial evidence. Therefore, Servidas's motion (Doc. 16) is GRANTED, the Commissioner's motion (Doc. 17) is DENIED, and the Court REMANDS the matter for further proceedings and a new decision.

Dated at Burlington, in the District of Vermont, this 6th day of April 2018.

<u>/s/ John M. Conroy</u>  
John M. Conroy  
United States Magistrate Judge